UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| HANDSOME P. PARKER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>YANKTON CAMP, WARDEN J. COX,<br>CORRECTIONAL OFFICER BEATTY,<br>and LT. KRYTO,<br><br>                    Defendants. | 4:21-CV-04001-KES<br><br><br>1915A SCREENING ORDER FOR<br>SERVICE IN PART AND DISMISSAL<br>IN PART |

Plaintiff, Handsome P. Parker, filed a pro se lawsuit under 28 U.S.C.
§ 1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388
(1971). Docket 1.

## I.    Miscellaneous Motions

Parker filed a notice to have his lawsuit proceed. Docket 26. Thus, his
motions to withdraw (Dockets 20, 22) are denied as moot. Parker moves for
reconsideration on this court's order granting him in forma pauperis status
and requiring an initial partial filing fee (Docket 17). Docket 18. The court
ordered Parker to file a new prisoner trust account report to determine whether
his motion for reconsideration had merit. Docket 19. Because Parker paid the
initial partial filing fee that he previously contested, his motion for
reconsideration (Docket 18) is denied as moot.

Now, he asks the court to reimburse him because he claims federal
officials took money from his account without his authorization. Docket 26.

The court is unaware of legal precedent that would allow it to reimburse Parker for money that has been received by the court for a filing fee that has not been paid in full. Thus, his motion (Docket 26) is denied. The court will now screen Parker's complaint under 28 U.S.C. § 1915A.

## II.    28 U.S.C. § 1915A Screening

### A.   Factual Background

The facts alleged in Parker's complaint are: that he was transferred to the Yankton Prison Camp (YPC) from another institution. Docket 1 at 2. When he was transferred, the YPC required him to quarantine for seventeen days. *Id.* He claims that while he was in quarantine, he did not have access to a phone to call his family and was not able to watch television. *Id.* at 3. Parker claims he was denied access to the contact list during this time and could not write to his family. *Id.* Parker could leave the quarantine room to use the restroom, to use the shower, and to get ice. *Id.* at 3. Parker claims that the Bureau of Prisons violated its own segregation and correspondence policy during his quarantine period. *Id.*[1] Parker claims that when he came to YPC he was told that his personal mail, like pictures and cards, would be photocopied and other mail, like magazines, would not be photocopied. *Id.* at 4.[2]

---

[1] "Parker and Inmates were restricted from contact list to write family, restricted from phone to call, and restricted [from] computers to write. Direct violation of BOP policy." Docket 1 at 3.

[2] Mail policy changes became effective on March 2, 2020. Docket 1-1 at 2. "You will be provided a photocopy of the envelope and the correspondence inside. Photos received will also be copied. The original will be stored for 30 days to afford you the opportunity to mail the original item to an address outside of the BOP, at your expense. After 30 days the mail will be destroyed." *Id.*

Parker asserts that his Eighth Amendment rights were violated because he was not allowed to communicate with his family and used the same restroom and showers with twenty other inmates. *Id.* Parker claims that he received rashes on his thighs because of the unsanitary conditions of the toilets and the restroom had "very little sanitation and very little cleaning products." *Id.* at 3-4. He also asserts that the ice machine did not have an ice scoop. *Id.* at 3.

Parker claims when he asked for extra fruit he was called into Correctional Officer (CO) Beatty's office. Docket 1 at 1. Parker was nervous because Lieutenant Kryte was there and Parker has filed numerous complaints during quarantine. *Id.* Lt. Kryte allegedly told Parker that he did not want to hear about him complaining anymore. *Id.* at 1-2. Parker claims that Lt. Kryte and CO Beatty were saying "[t]his is our institution[,] we run it however we want [and] we don't want to hear [anything] about it." *Id.* at 2. Parker asserts that his right to be free from intimidation has been violated. *Id.* He seeks monetary damages of $500,000 and injunctive relief. *Id.* at 4-5. He claims that he is "terrified" to go through the administrative remedy process in fear that Lt. Kryte will retaliate against him. *Id.*

### B.   Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89,

3

94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "[are] (1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

4

### C.   Legal Analysis

### 1.   Official Capacity Claims

"A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting *in his or her individual capacity* for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (emphasis added) (citing *Bivens*, 403 U.S. 388); *see also Little v. South Dakota*, No. 5:14-CV-05069-JLV, 2014 WL 6453844, at *3 (D.S.D. Nov. 17, 2014) ("A *Bivens* action may not be asserted against the United States, its agencies, or against federal employees in their *official* capacity." (internal quotation omitted)).

Because Parker does not mention in what capacities he is suing defendants, this court liberally construes that he sues them in both their individual and official capacities. *See* Docket 1. Parker names YPC, a federal prison camp, as a defendant. *Id.* A suit against defendants in their official capacity is treated as a suit against the Federal Bureau of Prisons, an agency of the United States. *See Buford*, 160 F.3d at 1203. "[A] *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Id.* And "*Bivens* and its progeny do not waive sovereign immunity for actions against the United States[.]" *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982). Thus, the court finds that the doctrine of sovereign immunity bars Parker's claims against any federal defendant sued in their official capacity and bars a suit against YPC. Parker's claims against YPC and

defendants, in their official capacities, are dismissed under 28 U.S.C.
§§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### 2.   Individual Capacity Claims

#### a.   First Amendment

"The purpose of *Bivens* is to deter individual federal officers from
committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61,
70 (2001). But a *Bivens* remedy is not available for all constitutional violations
and expanding the implied cause of action under *Bivens* is "a disfavored judicial
activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citing *Ashcroft v. Iqbal*,
556 U.S. 662, 672 (2009)). The United States Supreme Court has "never held
that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S.
658, 663 n.4 (2012). The Eighth Circuit Court of Appeals has left "for another
day the important question whether *Bivens* provides a remedy for First
Amendment claims[.]" *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020).
This court will analyze Parker's First Amendment claims under 42 U.S.C.
§ 1983, like the Eighth Circuit did in *Gonzalez*. *Id.* An analysis of whether
*Bivens* provides a remedy will only be considered if Parker's alleged facts
amount to a First Amendment violation.

#### i.   Intimidation/Retaliation

Parker alleges that his right to be free from intimidation has been violated.
Docket 1 at 1. "Verbal threats and name calling usually are not actionable
under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (citing
*Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985)). In *McDowell*, the

plaintiff claimed he was harassed generally and specifically to dissuade him from filing a grievance. *Id.* The court found such verbal threats to be insufficient to state a claim under § 1983. *Id.* This court has held that claims of general harassment do not amount to a constitutional violation. *Maxfield v. Vanderra*, 4:18-cv-04120-KES, 2020 WL 1304488, at *6 (D.S.D. March 19, 2020) (holding that defendants' "dead stares" and "muscled scene[s]" to deter plaintiff from filing a grievance were not enough to state a constitutional violation). Here, Parker's claims that he was intimidated when CO Beatty and Lt. Kryte talked about how he had been complaining too frequently is even less than "dead stares" and verbal threats. Parker's general harassment claim does not amount to a constitutional violation and is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

Next, Parker asserts that he is "terrified" to go through the administrative remedy process because he is afraid of retaliation from Lt. Kryte. Docket 1 at 4. To allege a First Amendment retaliation claim a plaintiff must show "(1) he engaged in a protected activity, (2) [unknown employees] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Parker alleges only a fear of being retaliated against. Parker has not alleged that defendants took an adverse action against him that was motivated by Parker

7

filing grievances. Thus, Parker's retaliation claim is **dismissed under 28 U.S.C.**
**§§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).**

### ii.   Phone Access

Parker also alleges that during his seventeen-day quarantine he was not
allowed to use the phone to call his family. Docket 1. An inmate's "**First**
**Amendment right to communicate with the outside world is a fact-intensive**
**universe.**" *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012). "**A**
**prisoner has no right to unlimited phone use.**" *Benzel v. Grammer*, 869 F.2d
1105, 1108 (8th Cir. 1989). Because an inmate does not have a right to
unlimited phone access, and Parker claims he was only withheld phone
privileges while in quarantine for seventeen days, his facts as alleged do not
amount to a constitutional violation. His claim regarding access to the phone is
dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### iii.   Prison Mail

### (a).   Policy Violation

Parker claims that defendants were violating the BOP mail policy when
they did not allow him to access the contact list or write to his family while he
was quarantined. Docket 1 at 3. He also asserts that the way the prison has
handled photocopying personal mail is a violation of BOP policy. *Id.* at 4. "[A]
violation of prison policy alone does not give rise to section 1983 liability[.]"
*Moore v. Rowley*, 126 Fed. Appx. 759, 760 (8th Cir. 2005); see also *Gardner v.*
*Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (stating "there is no § 1983 liability
for violating prison policy."). Parker's complaints about the prison violating its

own policy do not rise to the level of alleging a constitutional violation and are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### (b).   Constitutional Violation

Liberally construing Parker's alleged facts, he claims that his First Amendment right to send mail was violated when he was not allowed to send mail to his family while in quarantine. Inmates retain the First Amendment right to "send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994). Parker has alleged facts that his First Amendment right to receive mail was violated when defendants allegedly would not allow him to write to his family during quarantine.

The United States Supreme Court and the Eighth Circuit have not held that a *Bivens* remedy is available for First Amendment violations. *Reichle*, 566 U.S., at 663 n. 4; *Gonzalez*, 971 F.3d at 745. *In Ziglar v. Abbasi*, the Supreme Court explained that courts should exercise caution before recognizing implied causes of action. 137 S. Ct. at 1856. The Court further held that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citing *Iqbal*, 556 U.S. at 675). The *Ziglar* Court laid out "[t]he proper test for determining whether a case presents a new *Bivens* context is" to determine whether "the case is different in a meaningful way from previous *Bivens* cases decided by the Court." *Id.* at 1859.

If the case is meaningfully different from past cases, the court should then ask "if there is an alternative remedial structure present." *Id.* at 1858. Because "if Congress has created 'any alternative, existing process for

protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.' " *Id.* at 1858 (alterations in original) (quoting *Wilkie*, 551 U.S. at 550). Then the courts must weigh the "reasons for and against the creation of a new cause of action, the way common law judges have always done." *Wilkie*, 551 U.S. at 554. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress . . . ." *Ziglar*, 137 S. Ct. at 1858.

> A case may be meaningfully different:
>
> [B]ecause of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Parker alleges that his First Amendment right to send mail has been violated. Because the Supreme Court has never recognized a *Bivens* cause of action for First Amendment mail claims, Parker's claim involves a different constitutional right and is meaningfully different from previous *Bivens* claims that have been recognized by the Supreme Court.

10

"The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.' " *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has not defined what a special factor is, but has stated "that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

In *Bush*, the Supreme Court declined to create an implied damages action in a First Amendment suit against a federal employee. 462 U.S. at 390; *see also Reichle*, 566 U.S. at 663 n.4 ("We have never held that *Bivens* extends to First Amendment claims."). The Court declined to recognize a *Bivens* action because the cost, time, and energy associated with defending a *Bivens* action against a federal employee are significant and Congress is in a better position to evaluate the need for a damages action in a First Amendment suit against a federal employee. *Id.* at 388-89. Thus, the Court found there were "special factors counselling hesitation." *Id.* at 380.

Parker claims that he transferred to YPC from another institution and upon arrival he was forced to quarantine for seventeen days. Docket 1. During the quarantine, Parker was not allowed to access the contact list or write/send letters to his family. *Id.* at 1. Here, the court similarly finds that the cost, time, and energy associated with defending a *Bivens* action brought by an inmate against a federal BOP employee for an action based on the right to send mail

11

under the First Amendment are significant. Additionally, the BOP has established an administrative process to address these types of claims. The court finds that there are "special factors counselling hesitation" and declines to find a *Bivens* remedy for an inmate alleging a violation of his right to send mail under the First Amendment against a federal official. Parker's right to send mail claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### b. Eighth Amendment

Parker asserts that he has been subjected to cruel and unusual punishment due to the conditions of his confinement. *See* Docket 1 at 3. A *Bivens* remedy is available for a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *Ziglar*, 137 S. Ct. at 1854-55. To be successful on an Eighth Amendment claim, Parker must show that the alleged deprivation resulted "in the denial of the minimal civilized measure of life's necessities" and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation omitted).

First, under the objective component, "[w]hether conditions at a specific prison are unconstitutional necessitates a factual inquiry about the specific conditions at that facility." *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991). An inmate must show that a condition of confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). While the inmate must show that the confinement poses an "unreasonable risk of serious damage to his future health" or safety, the

12

inmate does not "need not await a tragic event" before seeking relief. *Id.* at
33-35.

Second, under the subjective component, the inmate must show that the
defendant prison officials "acted with a sufficiently culpable state of mind" in
relation to the prison condition. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)
(internal quotation omitted). A " 'should-have-known' standard, is not sufficient
to support a finding of deliberate indifference[.]" *Spruce v. Sargent*, 149 F.3d
783, 786 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prisoner need not
show that the prison official acted with "the very purpose of causing harm or
with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. A prisoner
need only show that the prison official knew of and disregarded "an excessive
risk to inmate health or safety." *Id.* at 837.

"[R]easonably adequate sanitation and the ability to eliminate and dispose
of one's bodily wastes without unreasonably risking contamination are basic
identifiable human needs of a prisoner protected by the Eighth Amendment[.]"
*Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994). Here, Parker claims
that while he was in quarantine the restroom was not sanitary and the cleaning
products were insufficient. Docket 1 at 3-4. He also asserts that he got a rash
from the unsanitary toilets and has filed grievances about the state of the
restrooms. *Id.* at 4. Parker also asserts that he had to share one restroom and
shower area with twenty inmates at a time when COVID-19 was a concern. *Id.*
Parker asserts facts to support that the cleanliness of the restroom has put him
at an unreasonable risk of contamination and has given him a rash. *Id.* He also

alleges that defendants are aware of the conditions because he filed grievances about the issue. His conditions of confinement claim regarding the sufficiency and cleanliness of the restroom is sufficiently pleaded under § 1915A.

Next, Parker argues that not being able to communicate with his family for seventeen days was cruel and unusual punishment. Docket 1 at 3. But he does not allege facts that support his claim that his inability to communicate is denying him of a "minimal civilized measure of life's necessities or that officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 834 (1994). Thus, Parker's Eighth Amendment claims regarding the lack of communication with his family are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

Thus, it is ORDERED:

1.   That Parker's claims against the YPC are dismissed under 28 U.S.C. §§1915(e)(2)(B)(i-ii) and 1915A(b)(1).

2.   That Parker's claims against defendants in their official capacities are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

3.   Parker's Eighth Amendment claim regarding the restroom sanitation and sufficiency of restroom and shower services survives screening. All other claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

4.   The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Parker so that he may cause the complaint to be served upon defendants.

5.   Parker shall complete and send the Clerk of Courts a separate summons and USM-285 form for defendants. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

6.   The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Docket 1) and this order, upon the defendants.

7.   Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

8.   Parker will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

9.   Parker's motions for reconsideration and to withdraw (Dockets 18, 20, 22) are denied as moot.

10.     Parker's motion for reimbursement (Docket 26) is denied.

Dated March 16, 2021

                    BY THE COURT:


                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE